IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 15, 2015


**STATE OF TENNESSEE v. RAPHAEL CORTEZ FERGUSON**


**Appeal from the Circuit Court for Blount County**
**No. C22337     David R. Duggan, Judge**

_____


**No. E2015-00984-CCA-R3-CD – Filed December 17, 2015**

_____


Appellant, Raphael Cortez Ferguson, pleaded guilty to facilitation of possession of a Schedule I controlled substance with intent to resell, a Class C felony, and received the agreed-upon sentence of three years to be served in the Tennessee Department of Correction.  The department of correction placed appellant in its special alternative incarceration unit and, approximately six months later, released him from custody subject to supervised probation.  A probation violation warrant was subsequently issued, alleging the following infractions:  (1) committing new criminal offenses for theft of property valued at more than $1,000 but less than $10,000, criminal simulation, and identity theft; (2) testing positive on two drug screens; and (3) failing to complete community service as ordered.  Following a hearing, the trial court revoked appellant's probation and ordered his sentence into execution.  On appeal, appellant argues that there was insufficient evidence supporting his new criminal offenses and that the remainder of the evidence warranted a lesser consequence than complete confinement.  Upon our review, we affirm the judgment of the trial court.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and D. KELLY THOMAS, JR., JJ., joined.

Joseph Liddell Kirk (on appeal), Knoxville, Tennessee; and Raymond Mack Garner, District Public Defender (at probation revocation hearing), Maryville, Tennessee, for the Appellant, Raphael Cortez Ferguson.

Herbert H. Slatery III, Attorney General and Reporter; Meredith DeVault, Senior Counsel; Michael L. Flynn, District Attorney General; and Matthew L. Dunn, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I. Facts and Procedural History**

Pursuant to a negotiated plea agreement dated February 24, 2014, appellant was sentenced to serve three years for facilitation of possession of a Schedule I controlled substance with intent to resell, a Class C felony. He was granted early release on August 15, 2014, by the Tennessee Department of Correction through its special alternative incarceration unit, also known as the "boot camp" program. Pursuant to that program, appellant was subject to the jurisdiction of the trial court because he was placed on probation. Subsequently, he was arrested for theft of property valued at more than $1,000 but less than $10,000, criminal simulation, and identity theft. The State filed a probation violation report, and a probation violation warrant was issued.

At the probation revocation hearing, the State presented Philip Jinks with the Knoxville Police Department Repeat Offenders Squad as a witness. On March 10, 2015, Officer Jinks was investigating complaints of drug activity at an apartment complex and learned that appellant was the subject of the complaint. While conducting surveillance at the complex, Officer Jinks conducted a traffic stop of a white Mercedes, which he knew to be driven by appellant's girlfriend, Brittany Osborne. Appellant was not present during the stop. Officer Jinks searched the vehicle pursuant to a K-9 alert and found a wallet with a Tennessee driver's license. The photograph on the license was that of appellant, but the identifying information on the license belonged to appellant's brother, Frederick Ferguson. Counterfeit $20 bills were also found in the wallet. Through the course of his investigation, Officer Jinks learned that appellant used the false identification to obtain goods and services; specifically, he registered two vehicles using the false identity. Appellant was also arrested in Knox County and used his brother's identity during that arrest.

Officer Jinks stated that later that same day, appellant was observed by another officer riding in a vehicle driven by his girlfriend. The vehicle had been reported stolen, which resulted in appellant's being charged with theft. Officer Jinks responded to the scene after appellant had been placed in custody, and when he spoke with appellant, appellant identified himself as Frederick Ferguson. However, based on his personal knowledge of appellant, Officer Jinks knew that to be incorrect.

Officer Jinks testified that in addition to the above charges, appellant was also charged with drug offenses that arose at the time of the theft of property charge. Regarding the counterfeit money, Officer Jinks recalled that appellant claimed that he had just sold some furniture and had received the counterfeit currency as payment. Although he recognized the currency to be counterfeit, he nonetheless kept the money.

-2-

On cross-examination, Officer Jinks acknowledged that the owner of the stolen vehicle had since retracted his complaint and was no longer cooperating with authorities with regard to the prosecution of appellant's codefendants. He was not aware of whether appellant's case had also been dismissed for lack of prosecution. He agreed that when he found the wallet, appellant was not present and was not attempting to use the identification for any purpose. He further agreed that when questioned, appellant stated that he sometimes used the name Frederick Ferguson. Officer Jinks acknowledged that the criminal simulation charge arose from the presence of the counterfeit $20 bills in the wallet that contained an identification card with appellant's picture on it. The wallet was found in the console of the vehicle driven by appellant's girlfriend, but appellant was not present.

On redirect examination, Officer Jinks explained that through his investigation, he learned that Frederick Ferguson actually resided in Michigan and that he was mentally challenged.

Appellant testified on his own behalf and stated that the theft of property charge arising from the stolen vehicle had been dismissed "because the car was never stolen." He claimed that he never saw the wallet, identification, or counterfeit currency about which Officer Jinks testified. He said that when Officer Jinks asked him about an identification card, he told Officer Jinks that he "[didn't] know what he [was] talking about." He said he never told Officer Jinks that he sometimes used the name Frederick Ferguson and stated that he did not knowingly have possession of any counterfeit currency. He denied telling Officer Jinks that he had sold furniture and received the counterfeit money as payment. Appellant acknowledged that the charges for criminal simulation and identity theft were still pending and that he planned to enter pleas of not guilty to those charges.

Appellant said that he had been reporting to his probation officer as required, that he had performed the required community service, and that he had taken the necessary drug class. He claimed that the probation violation was the result of Officer Jinks's "harassment" of him. He maintained that Officer Jinks had attempted to "make [him] co-conspirators with people that [he] didn't even know"; that Officer Jinks informed the manager of the apartment complex where he first lived when released from prison that he was a drug dealer, which resulted in his being evicted; and that he texted appellant's friends and told them that he was "no good" and a "drug dealer" and that they should talk to Officer Jinks about him.

On cross-examination, appellant admitted that his brother was a resident of Michigan and that there was no reason for his date of birth and social security number to be on a Tennessee driver's license. He acknowledged that he had tested positive for

drugs twice since his release from prison and that he had "missed [his community service] once or twice."

Upon conclusion of the hearing, the State set forth that appellant was on parole in Michigan when he pleaded guilty to the facilitation charge and that Michigan had not yet sought return of appellant to answer for his parole violation in that state. It argued that appellant was incapable of complying with the terms of probation and urged execution of the original sentence. Appellant conceded testing positive on the drug screens and falling behind on community service but, through counsel, requested split confinement of sixty days and a subsequent reinstatement of supervised probation.

The trial court found in favor of appellant with regard to the theft of property charge. However, the trial court found Officer Jinks's testimony credible and concluded that the State had met its burden of proof with respect to the charges of identity theft and criminal simulation. Specifically, the trial court ruled:

> [The currency] was found to be in [appellant's] wallet, whether he was in the car or not. And I credit in part also the fact that the officer had personal knowledge of the fact that Ms. Osborne was [appellant's] girlfriend, that she drives a white Mercedes, this wallet with his picture on the license but otherwise alternative false information on the identity of [appellant], being his brother's identity, who apparently lives in Michigan with no reason to have a Tennessee license. I think he was in possession of counterfeit money and money which he knew to be counterfeit, and I think the fact that it was in his wallet evidenced intent to pass it.

Accordingly, the trial court found that the State had established these grounds for revoking appellant's probation by a preponderance of the evidence. The trial court concluded that appellant, through his own testimony, established the additional grounds set forth in the warrant—testing positive for drugs and failing to complete community service. The trial court noted that were it not for the department of correction placing appellant in boot camp, he would not have been on probation at all, pursuant to the terms of his plea agreement. While acknowledging the various options available to the trial court upon a finding of a probation violation, the trial court revoked appellant's probation and ordered his sentence into execution.

## II. Analysis

Tennessee Code Annotated section 40-20-201 provides the department of correction authority to place an inmate in an alternative program under specific circumstances:

Notwithstanding any other provision of the law to the contrary, in the event that an offender is sentenced to confinement in the department of correction for six (6) years or less and is committed to the department, the department shall have the authority to place the offender in a special alternative incarceration unit in lieu of confinement in a regular state penal facility. In such a unit the offender shall, at a minimum, be required to participate for a period of ninety (90) days in an intensive regimen of work, exercise, military-type discipline and available treatment programs in accordance with policies and procedures established by the department.

Upon completion of this program, commonly referred to as "boot camp," the inmate is placed on supervised probation, which is subject to revocation by the trial court pursuant to Tennessee Code Annotated section 40-35-311. *See* Tenn. Code Ann. § 40-20-206 (citing Tenn. Code Ann. § 40-35-311).

The revocation of a suspended sentence rests in the sound discretion of the trial judge. *State v. Gregory*, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997) (citing *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991)). In determining whether to revoke probation, it is not necessary that the trial judge find that a violation of the terms of the probation has occurred beyond a reasonable doubt. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). If the trial court finds by a preponderance of the evidence that the defendant has violated the conditions of probation, the court is granted the authority to: (1) order confinement; (2) order execution of the sentence as originally entered; (3) return the defendant to probation on appropriate modified conditions; or (4) extend the defendant's probationary period by up to two years. Tenn. Code Ann. §§ 40-35-308(a), -308(c), -310, -311(e)(1); *see State v. Hunter*, 1 S.W.3d 643, 648 (Tenn. 1999). The appellate standard of review of a probation revocation is abuse of discretion. *See State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *see also State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007). Generally, "[a] trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010) (citing *State v. Jordan*, 325 S.W.3d 1, 38-40 (Tenn. 2010)). In the context of probation revocations, for this court to find an abuse of discretion, "there must be no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." *Shaffer*, 45 S.W.3d at 554; *see also State v. Pamela J. Booker*, No. E2012-00809-CCA-R3-CD, 2012 WL 6632817, at *2 (Tenn. Crim. App. Dec. 19, 2012).

Appellant argues that despite counsel's admission that he had two positive drug screens and noncompliance with the terms of his community service, he nonetheless posits that "[g]iven the sketchy evidence around the identity theft and criminal simulation

allegations, the trial court's reliance on its findings with regard to these allegations was unreasonable." We disagree.

The testimony of Officer Jinks, which the trial court credited, established that Officer Jinks became aware that appellant was the subject of a complaint regarding drug activity in an apartment complex. Officer Jinks knew that appellant's girlfriend, Ms. Osborne, drove a white Mercedes. While conducting surveillance in the area, Officer Jinks conducted a traffic stop of Ms. Osborne's vehicle. In her vehicle, Officer Jinks found appellant's wallet. He identified it as such because the Tennessee driver's license contained therein bore appellant's photograph but different identifying information naming him as Frederick Ferguson. He also found counterfeit currency. That same day, after appellant had been arrested for theft of property, he reported to Officer Jinks that his name was, in fact, Frederick Ferguson, but Officer Jinks was aware that the information was incorrect. The trial court credited Officer Jinks's testimony that appellant acknowledged that the currency in his possession was counterfeit and that he proffered an explanation as to how he came to be in possession of it. The evidence also established that Frederick Ferguson, appellant's brother, was a resident of Michigan who had no reason to have his identifying information on a Tennessee driver's license.

We reiterate that the evidence presented at a probation violation hearing need not rise to the level of "beyond a reasonable doubt" to establish the facts underlying a violation for garnering new criminal charges. *Harkins*, 811 S.W.2d at 82. Rather, it is sufficient that the trial court find by a preponderance of the evidence that the violation occurred. We conclude that the trial court did not abuse its discretion in revoking appellant's probation for garnering the new charges of identity theft and criminal simulation.

Moreover, the trial court had evidence, provided by appellant and conceded by his counsel, that appellant had violated the technical terms of his probation by failing two drug screens and by failing to complete his community service as required. *See State v. James T. Cooper,* No. M1999-01132-CCA-R3-CD, 2000 WL 1130128, at \*3 (Tenn. Crim. App. Aug. 2, 2000) (noting that appellant's violation based on failed drug tests was sufficient to warrant revocation of his probation even though the other alleged basis was unsupported by the record). The trial court was within its discretion in revoking appellant's three-year sentence and ordering it into execution on these grounds alone.

**CONCLUSION**

Based upon our review of the record, the briefs of the parties, and the applicable legal authority, we affirm the judgment of the trial court.

_____
ROGER A. PAGE, JUDGE